UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHAN PAUL HANNA,

        Petitioner,

                                            File No. 1:03-CV-443

v.

                                            HON. ROBERT HOLMES BELL

JANETTE PRICE,

       Respondent.
                                             /

## O P I N I O N

      This matter is before the Court on Respondent's objections to the Magistrate Judge's August 11, 2005 Report and Recommendation ("R&R") recommending the grant of a conditional writ of habeas corpus. Petitioner raised four grounds for relief in his habeas corpus petition including: 1) deprivation of his due process rights by the state court's determination that he knowingly and intelligently waived his *Miranda* rights and voluntarily made statements to the police; 2) violation of his due process rights based on a lack of competent evidence of sanity; 3) a due process violation by repeated instances of prosecutorial misconduct during trial and closing argument; and 4) deprivation of his right to the effective assistance of counsel where defense counsel failed to object to prosecutorial misconduct during trial. After a thoughtful and thorough analysis of Petitioner's claims, the Magistrate Judge determined that a conditional writ of habeas corpus should be granted on three of the four grounds for relief presented by Petitioner. The Magistrate Judge

recommended granting Petitioner relief on the first ground for relief, lack of a voluntary, knowing, and intelligent waiver of his *Miranda* rights, the third ground for relief, prosecutorial misconduct, and the fourth ground for relief, ineffective assistance of counsel. Respondent has filed timely objections to the R&R.

After reviewing the R&R, Respondent's objections, and the record of Petitioner's state court criminal case, the Court concludes that Respondent's objections should be overruled and the Magistrate Judge's R&R approved and adopted as the opinion of the Court. Accordingly, the petition for writ of habeas corpus is granted.

I.

At the outset, the Court notes that there is virtually no doubt that Petitioner committed the murder that is the subject of his conviction in the state court.[1]  This case, however, concerns the fairness of Petitioner's criminal trial. This Court is required to make a *de novo* review upon the record of those portions of the R&R to which specific objections have been made. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). *See also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Although the R&R is reviewed *de novo*, this Court must review the state court proceedings consistent with its authority under 28 U.S.C. § 2254.

---

[1] The Court will dispense with a recitation of the underlying facts and procedural history of Petitioner's criminal case. The Magistrate Judge meticulously set forth the relevant facts in the R&R. *See* R&R at 2-22. The Court has reviewed the proposed findings of facts and concludes that the R&R represents a fair and accurate statement of the facts.

This action is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See, e.g., Penry v. Johnson*, 532 U.S. 782, 791 (2001). Under the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Moore v. Parker*, 425 F.3d 250, 253 (6th Cir. 2005).

The phrase "clearly established federal law" in § 2254(d)(1) refers only "to the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Thus, the Court's inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [Petitioner's] conviction became final." *Onifer v. Tyszewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

The Court's review is also highly deferential to the state court in that a decision of the state court may be overturned only if (1) "it arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," *Biros v. Bagley*, 422 F.3d 379, 386 (6th Cir. 2005) (quoting *Williams*, 529 U.S. at 412-13), (2) involves facts that are materially

indistinguishable from a Supreme Court case but nonetheless arrives at a different result, *Jones v. Jamrog*, 414 F.3d 585, 591 (6th Cir. 2005), (3) the state court identifies the correct governing legal rule from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case, *Biros*, 422 F.3d at 386 (quoting *Williams*, 529 U.S. at 413), or (4) the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). Habeas relief may not be granted "simply because [the] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Williams*, 529 U.S. at 365). Rather, the state court's application of clearly established federal law must be "objectively unreasonable." *Id*.

A.  <u>Voluntariness of Petitioner's Waiver of *Miranda* Rights</u>

Respondent first objects to the Magistrate Judge's conclusion that the Michigan Court of Appeals unreasonably applied clearly established Supreme Court precedent in evaluating the voluntariness of Petitioner's waiver of his Fifth Amendment rights. The Magistrate Judge determined that the Michigan Court of Appeals failed to weigh relevant factors in considering whether Petitioner's waiver was voluntary and failed to evaluate the voluntariness claim in light of four applicable Supreme Court precedents, *Connelly v. Colorado*, 479 U.S. 157 (1986); *Mincey v. Arizona*, 437 U.S. 385 (1978); *Townsend v. Sain*,

372 U.S. 293 (1963); and *Blackburn v. Alabama*, 361 U.S. 199 (1960). The Court has reviewed the R&R and Respondent's objections and agrees with the Magistrate Judge's conclusion.

Respondent contends that although the Michigan Court of Appeals did not cite to the Supreme Court cases relied upon by the Magistrate Judge and did not mention Petitioner's circumstances during the interrogation, the court's conclusion that Petitioner's confession was voluntary was reasonable and did not contradict clearly established Supreme Court precedent. Respondent is correct that it is not necessary for the state court to cite or even be aware of Supreme Court precedent, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). In this case, however, the Michigan Court of Appeals' decision is in direct conflict with a line of Supreme Court cases establishing that a law enforcement officer's knowledge of a suspect's physical and mental condition prior to questioning may be sufficient to establish the necessary police conduct to constitute a due process violation. *See Connelly v. Colorado*, 479 U.S. 157 (1986); *Mincey v. Arizona*, 437 U.S. 385 (1978); *Townsend v. Sain*, 372 U.S. 293 (1963); *Blackburn v. Alabama*, 361 U.S. 199 (1960). The Michigan Court of Appeals' failure to consider Petitioner's voluntariness claim in light of these cases rendered the court's decision an unreasonable application of Supreme Court precedent.

Respondent argues that *Mincey*, *Townsend*, and *Blackburn* are distinguishable from this case. The Court has reviewed *Mincey*, *Townsend*, and *Blackburn* and concludes, under

5

*de novo* review, that the Magistrate Judge properly determined that the circumstances of this case, taken as a whole, are substantially similar to the circumstances in the three cited cases. Thus, a proper evaluation of the voluntariness of Petitioner's confession implicated *Mincey, Townsend,* and *Blackburn*.

Respondent's attempts to distinguish this case from *Mincey*, *Townsend*, and *Blackburn* are unavailing. For example, Respondent contends that *Mincey* is distinguishable because, in that case, petitioner clearly requested that interrogation cease until he had a lawyer. *See* 437 U.S. at 400. A review of *Mincey* indicates that this was simply one factor evaluated by the Court in determining the voluntariness of petitioner's statement. The Court placed great weight on the fact that petitioner was in the intensive care unit, had been seriously wounded hours earlier, was depressed, complained to the interrogating officer that he was in pain, and was lying on his back with medical tubes in his nose and mouth. Under these circumstances, the Court concluded that petitioner was "at the complete mercy" of the interrogating officer. *Mincey*, 437 U.S. at 399.

Similarly in this case, as noted by the Magistrate Judge, Petitioner was in the intensive care unit, suffering from three bullet wounds inflicted by the police, had been out of surgery for seven or eight hours, was taking pain medication, expressed to the interrogating officers that he was in pain and explained that he had not eaten for days, had tubes in his nose and mouth, he was suicidal, and his voice was barely audible over his breathing. While Petitioner did not request that the officers refrain from questioning him until he had an attorney, this

6

single factor does not render *Mincey* inapplicable. As thoroughly detailed in the R&R, the similarities between this case and *Mincey*, *Townsend*, and *Blackburn* are substantial enough that a failure to analyze Petitioner's claim in light of these cases resulted in an unreasonable application of clearly established Supreme Court precedent. Thus, the Magistrate Judge correctly determined that the state court's failure to consider Petitioner's circumstances and the interrogating police officer's knowledge and awareness of these circumstances consistent with *Mincey*, *Townsend*, and *Blackburn* resulted in an unreasonable application of clearly established Supreme Court precedent.

Moreover, a review of the Michigan Court of Appeals opinion reinforces the conclusion that the state court unreasonably applied clearly established Supreme Court precedent. The state court began its voluntariness analysis with the proposition that this determination is made "solely by examining police conduct." 11/27/01 Michigan Court of Appeals Opinion at 9 (Docket #33). While police conduct is a salient, necessary factor it is by no means the "sole" determination under the voluntariness inquiry. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004) (noting eight factors a court should consider in determining whether a statement was voluntary) (citing *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993)). As detailed above and more fully in the R&R, the Supreme Court has clearly held that a police officer's knowledge and awareness of a suspect's mental and physical condition can be sufficient to establish the necessary state

7

action. Thus, the state court's voluntariness inquiry was far too narrow and resulted in an unreasonable application of clearly established Supreme Court precedent.

Finally, the Magistrate Judge also rejected as unreasonable the state court's conclusion that a note in Petitioner's medical chart stating "[f]urther pain medication held per request of the detective to facilitate communication," was not a coercive interrogation tactic. The Michigan Court of Appeals dismissed this note because Petitioner was not aware of the request and because a "less troubling explanation" existed in that the denial of pain medication was requested so that Petitioner could listen and speak coherently.[2]  11/27/01 Mich. Ct. App. Op. at 10. The Magistrate Judge properly rejected this conclusion as unreasonable stating, "[t]he withholding of medication from a suspect to facilitate questioning must be considered coercive, regardless of whether the officers informed the suspect of their conduct and implicitly threatened or promised relief if he cooperated. Any conduct by police that would increase a suspect's pain during the course of questioning must be considered inherently coercive." R&R at 39. Accordingly, Respondent's objections are overruled and the Court adopts the Magistrate Judge's determination that the state court's conclusion that Petitioner voluntarily waived his Fifth Amendment rights was an unreasonable application of clearly established Supreme Court precedent.

---

[2] The state court did not indicate where in the record it finds support for this "less troubling explanation."

B.     Knowing and Intelligent Waiver

Respondent next objects to the Magistrate Judge's determination that the Michigan Court of Appeals' conclusion that Petitioner knowingly and intelligently waived his *Miranda* rights was based, in part, on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(2).

Respondent correctly notes that the state court identified the proper legal standard applicable to Petitioner's waiver.  The Magistrate Judge's decision, however, did not rest on a determination that the state court unreasonably applied clearly established federal law.  Rather, the R&R focused on the state court's unreasonable determination of the facts in light of the record in the state court proceeding.  *See* 28 U.S.C. § 2554(d)(2).  The Court has reviewed the R&R as well as the Michigan Court of Appeals opinion in light of the factual record in the state court proceeding and concludes that the Magistrate Judge correctly determined that the state court's decision was based on findings of fact that were contrary to the record in the state court proceeding.  While Respondent gives a lengthy recitation of the circumstances surrounding Petitioner's waiver, she fails to demonstrate that the Magistrate Judge erroneously analyzed the issue.

The record in the state court proceeding contained testimony indicating that, at the time of Petitioner's interrogation, he had not had food or water since committing the murder. During the interrogation, Petitioner explained to the officers that he had not eaten anything during the three days between the shooting and being taken to the hospital.  *See* 6/24/99 Trial

Tr. at 237-38 (Docket #28). The nurse attending to Petitioner during the night before the interrogation also explained that he had not been allowed to eat or drink because of his surgery. 3/30/99 Tr. at 26.

In spite of this record, the Michigan Court of Appeals quickly dismissed Petitioner's lack of food and water because it was a consequence of his decision to flee after his crime and because "the nasal/gastric tube indicates, rather obviously, that Hanna was receiving nourishment through that mechanism." Mich. Ct. App. Op. at 10. Both of these conclusions are clearly contrary to the record. First, as the Magistrate Judge noted, the fact that Petitioner's lack of food and water was of his own making does not effect the relevance of whether his physical and mental condition impaired his ability to understand and appreciate his rights. Moreover, lack of food and water and the interrogating officers' awareness of this fact, are clearly relevant to an assessment of the totality of the circumstances surrounding the waiver of Petitioner's rights.

Second, the state court also concluded that Petitioner's allegation that he had not received nourishment while in the hospital strained credulity because he was receiving nourishment from the nasal/gastric tube. The Court agrees with the Magistrate Judge's conclusion that this was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The only evidence in the record regarding Petitioner's nourishment was that he had not eaten from the time of the shooting to his arrest and transportation to the hospital. Further, the nurse attending to Petitioner explained that

10

he had not been given anything to eat because he was post-operative. Finally, she also testified that the nasal/gastric tube was not for nourishment, but was to keep stomach gases down and prevent him from throwing up. 3/30/99 Tr. at 23. Accordingly, the Court agrees with the Magistrate Judge's conclusion that the state court's unsupported findings of fact regarding Petitioner's lack of food and water resulted in a determination that was based, in part, on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). Thus, Respondent's objections are overruled.

Although Respondent objected to the Magistrate Judge's determination that the state court's application of clearly established Supreme Court precedent regarding whether Petitioner voluntarily, knowingly, and intelligent waived his *Miranda* rights was not reasonable, she has not objected to the determination that the admission of Petitioner's statements was not harmless. The Court has reviewed this portion of the R&R and concludes that the Magistrate Judge properly resolved this issue. Accordingly, the Court adopts the Magistrate Judge's conclusion that the petition be granted on the first ground for relief.

C.       Prosecutorial Misconduct

In his petition, Petitioner asserts three instances of prosecutorial misconduct. First, the prosecutor impermissibly denigrated the insanity defense. Second, the prosecutor impermissibly invited testimony from a police officer that Petitioner invoked his right to silence during his second interrogation. Third, the prosecutor impermissibly appealed to

11

juror sympathy in his closing argument. The Magistrate Judge determined that the denigration of the insanity defense and the eliciting of testimony regarding Petitioner's silence each, standing alone, constituted prosecutorial misconduct that violated due process. Further, the Magistrate Judge also concluded that the cumulative impact of all three instances of misconduct, taken together, violated due process.

Respondent first objects to the Magistrate Judge's determination that the prosecutor impermissibly denigrated the insanity defense in violation of Petitioner's due process rights. Respondent's objection is extremely general, consisting of an argument that the state court should be given considerable leeway in applying the Supreme Court's prosecutorial misconduct standard, a single sentence stating that the state court recognized Petitioner's claim but did not find that it rose to the level of unconstitutional misconduct, and an argument that the Magistrate Judge improperly relied on a decision of the Sixth Circuit.

The Court has reviewed the record and the R&R and concludes that Respondent's objections are without merit. First, although Respondent is correct that this Court must give deference to the state court's determination of Petitioner's claim, *see e.g., Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) ("Claims of prosecutorial misconduct are reviewed deferentially on habeas review."); this high degree of deference does not allow a state court to recharacterize Petitioner's claim and then determine that the recharacterized claim does not rise to a constitutional level. This, however, is exactly what the Michigan Court of Appeals engaged in when assessing the prosecutor's remarks during rebuttal argument.

> During rebuttal argument the prosecutor made the following arguments:
>
>> We do not want to create a ready avenue of escape for a person who does a dastardly deed and kills another human being via the reason of insanity because you enjoy some beliefs you think you have so therefore that puts me home free for whatever I do.
>> The word we are really speaking about is responsibility . . . I don't think we can allow fixations of the mind to allow anyone to destroy another person and to be excused by reason of saying they're insane.

6/28/99 Trial Tr. IV at 425-26 (Docket #30). The Court agrees with the Magistrate Judge that these remarks directly denigrated the insanity defense by telling the jury to refuse to allow a person's "fixations of the mind" to excuse the person's crime. Further, the prosecutor urged the jury to avoid providing Petitioner with a "ready avenue of escape" through the insanity defense. When the Michigan Court of Appeals considered these comments, it did not analyze them as a direct attack on the insanity defense, but rather, mischaracterized the comments as glancing off of the equally impermissible argument that, absent a guilty verdict, Petitioner would be free to harm someone else. Mich. Ct. App. Op. at 14. Thus, this recharacterization precluded a determination of the Petitioner's actual claim that the prosecutor's argument directly disparaged the insanity defense, and resulted in an unreasonable application of Supreme Court precedent.

Second, Respondent objects to the Magistrate Judge's reliance upon *Gall v. Parker*, 231 F.3d 265 (6th Cir. 2000), a Sixth Circuit case in which the court found that a prosecutor's comments denigrating the insanity defense violated due process and warranted habeas relief. Respondent contends that the Magistrate Judge placed undue reliance upon *Gall*, in light of

13

the fact that it applied the pre-AEDPA standard of review and is a decision of a federal circuit court, not the Supreme Court. Respondent is correct that a federal court, on habeas review under § 2254, may not look to lower federal court decisions in deciding whether a state court adjudication is contrary to, or an unreasonable application of federal law. *See Smith v. Stegall*, 385 F.3d 993 (6th Cir. 2004) ("As is dictated by the statute, we may not look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of clearly established federal law.") (quoting *Doan v. Brigano*, 237 F.3d 722, 729 (6th Cir. 2001)). The Magistrate Judge, however, took great pains during his discussion of *Gall* to indicate that he was mindful of the applicable AEDPA standard and that the Sixth Circuit's decision was not controlling. Moreover, the Magistrate Judge properly applied the governing Supreme Court precedent in *Darden v. Wainwright*, 477 U.S. 168 (1986), and *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). Nevertheless, because *Gall* involved a comparable factual situation, in which the court applied the Supreme Court's prosecutorial misconduct standard, it was "at least instructive precedent concerning the existence and application of clearly established Supreme Court authority." R&R at 57-58, n. 13.[3]

---

[3]The Magistrate Judge's reference to *Gall* as a decision that "applied United States Supreme Court authority in a review controlled by the AEDPA" is clearly wrong. Although *Gall* was issued over four years after AEDPA, the opinion notes that, because petitioner filed his habeas petition prior to the passage of AEDPA, the pre-AEDPA standard of review applied. *See Gall*, 231 F.3d at 283, n. 2.

*Gall* is instructive as to the application of *Darden* and *Donnelly*, the Supreme Court cases establishing the standard for evaluating a prosecutorial misconduct claim, in the context of a prosecutor's denigration of the insanity defense during closing argument.[4] Moreover, leaving *Gall* aside, the Court agrees with the Magistrate Judge's conclusion that the prosecutor's remarks, when viewed in the context of the case, rose to the level of prosecutorial misconduct in violation of Petitioner's due process rights. See R&R at 57-59. In this context, the Magistrate Judge's citation to *Gall* was not misplaced and did not run afoul of the AEDPA standard of review. Nor did the Magistrate Judge erroneously apply *Darden* and *Donnelly* to this case. Accordingly, Respondent's objections are overruled.

Respondent also objects to the Magistrate Judge's conclusion that the state court failed to apply relevant Supreme Court precedent to Petitioner's claim that the prosecutor improperly elicited testimony from a police officer regarding Petitioner's invocation of his right to silence. During the prosecutor's examination of Detective Sexton, the second officer to interrogate Petitioner while in the hospital, the following colloquy occurred:

---

[4]Respondent's attempt to factually distinguish *Gall* from this case is unavailing. The Court agrees with the Magistrate Judge that while *Gall* involved comments that were more pervasive, in this case the prosecutor specifically and directly denigrated the insanity defense and, similar to *Gall*, the prosecutor's comments were part of a larger set of improper conduct.

> Q:   (By Mr. Elliot, continuing:) Thank you. The interview was terminated by the arrival of Miss Church; is that correct?
> A:   Not on her arrival. When she arrived I asked if he still wanted to continue talking and he stated on the record with the advice of counsel he was not going to.
> Q:   He was aware of that, anyway?
> A:   Yes.

6/25/99 Trial Tr. Vol. III at 273 (Docket #29). Applying *Doyle v. Ohio*, 426 U.S. 610 (1976) and *Wainwright v. Greenfield*, 474 U.S. 284 (1986), the Magistrate Judge determined that the Michigan Court of Appeals reached a decision that was contrary to the decisions of the Supreme Court. R&R at 63-64. Specifically, the Magistrate Judge determined that the state court had completely overlooked the Supreme Court's decision in *Wainwright*.

The Court agrees with the Magistrate Judge's resolution of this issue. The state court applied far too narrow a standard for evaluating Petitioner's claim, stating only that a defendant's silence may not be used as substantive evidence of guilt. Mich. Ct. App. Op. at 13. This is, at best, partially correct, but completely ignores the Supreme Court's decision in *Wainwright*, holding that a prosecutor's use of a defendant's silence as evidence undermining the insanity defense is forbidden. 474 U.S. at 292. Moreover, in her objections, Respondent gives an impermissibly strained interpretation to *Wainwright*, that is itself, contrary to the Supreme Court's holding. *Wainwright* was not limited to use of a defendant's silence to establish guilt, as Respondent would have it, rather, it expressly prohibited use of defendant's silence to undermine the insanity defense. 474 U.S. at 292 ("It is equally unfair to breach [the promise that silence will not be used against an arrested person] by using

16

silence to overcome a defendant's plea of insanity."). Accordingly, Respondent's objection is overruled and the Court finds that the Magistrate Judge properly determined that the state court decision was contrary to the Supreme Court's *Wainwright* decision.

Respondent also contends that, assuming the prosecutor's questioning was improper, it was harmless and does not warrant granting Petitioner's requested relief.[5] Prosecutorial comments about a defendant's post-*Miranda* silence are reviewed under a harmless error standard. *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002); *see also Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir. 1999) (holding that harmless error standard applies even if federal habeas court is the first to review for harmless error). "An error is found to be harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

The prosecutor's improper eliciting of testimony regarding Petitioner's silence was not harmless error. As set forth in the R&R, the prosecution introduced little to no evidence regarding Petitioner's sanity, the only contested issue at trial. *See* R&R at 43-44. Although the prosecutor's reference to Petitioner's silence was brief, it was directly targeted to Petitioner's sanity. This coupled with the fact that the prosecutor offered little other evidence

---

[5]The Court notes that it does not appear that the Magistrate Judge separately analyzed whether the prosecutor's improper eliciting of testimony regarding Petitioner's silence was harmless error. The Magistrate Judge, however, did analyze whether the three instances of prosecutorial misconduct, taken together, supported a finding that the misconduct was not harmless. *See* R&R at 66-69.

regarding Petitioner's sanity and the fact that Petitioner offered four experts on his sanity, indicates that the prosecutor's conduct cannot be considered harmless error.  Accordingly, the Court overrules Respondent's objections and approves and adopts the Magistrate Judge's conclusion that Petitioner is entitled to relief based upon prosecutorial misconduct.

D.      Ineffective Assistance of Counsel

Petitioner's ineffective assistance of counsel claim encompassed defense counsel's failure to object to the prosecutor's examination of Detective Sexton regarding Petitioner's invocation of his right to silence as well as the prosecutor's improper argument during closing argument.  The Magistrate Judge analyzed the ineffective assistance of counsel claim both as an independent ground for relief and as cause excusing the procedural default of his prosecutorial misconduct claim.  *See* R&R at 53-54, 59-60, 65-66, 69-73.  Ultimately, the Magistrate Judge concluded that defense counsel's failure to object constituted ineffective assistance of counsel both excusing his procedural default and as an independent ground for relief.  Respondent has objected to the Magistrate Judge's conclusion, contending that Petitioner's claim is without merit because the prosecutor did not engage in misconduct, any misconduct did not deprive Petitioner of a fair trial, and that the Michigan Court of Appeals' finding that defense counsel did not commit substantial error resulting in substantial prejudice was not unreasonable.

Respondent's objection is quite general and does not point to any specific error in the Magistrate Judge's analysis of Petitioner's claim.  Rather, Respondent appears to simply

18

object to the Magistrate Judge's conclusion regarding the ineffective assistance of counsel claim. The Court has reviewed *de novo* the R&R and agrees with the Magistrate Judge's conclusion. The Magistrate Judge's analysis thoroughly and properly addressed the ineffective assistance of counsel claim such that it is not necessary for the Court to add any additional analysis. Accordingly, the Court approves and adopts the Magistrate Judge's conclusions that Petitioner's ineffective assistance of counsel claim established cause excusing the procedural default of his prosecutorial misconduct claim and that the state court's determination of the claim rested on conclusions that were contrary to or an unreasonable application of Supreme Court precedent.

II.

Respondent's objections to the August 11, 2005 R&R are overruled and the R&R is approved and adopted as the opinion of the Court. Accordingly, Petitioner is granted a conditional writ of habeas corpus. Within 90 days of the entry of this judgment, the State of Michigan must provide Petitioner a new trial or release him. An order will be entered consistent with this opinion.


Date:   November 17, 2005         /s/ Robert Holmes Bell
                                  ROBERT HOLMES BELL
                                  CHIEF UNITED STATES DISTRICT JUDGE